


UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

DERRICK R. OMARO, 92A0608,

Plaintiff,

v.

ANTHONY ANNUCCI, Commissioner NYS Department of Corrections & Community Supervision; VERNON J. FONDA, Deputy Commissioner/Inspector General NYS Department of Corrections & Community Supervision; MARK L. BRADT, Superintendent Attica Correctional Facility; WILLIAM HUGHES, Deputy Superintendent Attica Correctional FACILITY; J. CHISHOLM, Inmate Grievance Supervisor Attica Correctional Facility; and K. SHEARING, Correctional Officer Attica Correctional Facility,

Defendants.

---

**DECISION AND ORDER**
13-cv-06442 EAW

## INTRODUCTION

Plaintiff Derrick O. Omaro ("Plaintiff") is an inmate in the custody of the State of New York who is currently confined in the Attica Correctional Facility. Plaintiff commenced the instant action pursuant to 42 U.S.C. § 1983 on August 19, 2013. (Dkt. 1). Plaintiff alleges that on or about July 10, 2013, defendant K. Shearing engaged in sexual misconduct during the course of an improper pat-frisk, and that she removed privileged legal mail from Plaintiff's cell. (*Id.* at 6).

Defendants have moved for summary judgment in lieu of an answer, arguing that Plaintiff has failed to exhaust his administrative remedies with respect to the claims raised in the complaint. (Dkt. 9). For the reasons set forth below, Defendants' motion is granted.

## BACKGROUND

Plaintiff is an inmate currently confined in the Attica Correctional Facility ("Attica"). He claims that on or about July 10, 2013, Defendant K. Shearing ("C.O. Shearing"), a female correctional officer at Attica, ordered him to step out of his cell while he was wearing only undergarments. (Dkt. 11 at 10). Plaintiff claims that C.O. Shearing performed a pat-frisk on him despite the presence of a male correctional officer. (*Id.*). According to Plaintiff, he protested the pat-frisk on the ground that he is a Muslim and was participating in a fasting period during which he was prohibited from having contact with women. (*Id.* at 10-11). Plaintiff claims that C.O. Shearing sexually assaulted him during the course of the pat-frisk. (*Id.* at 11). According to Plaintiff, after C.O. Shearing completed the pat-frisk, she removed certain legal documents from his cell. (Dkt. 1 at 3).

Plaintiff states that he reported this alleged sexual assault by "immediately writing a detailed report" to defendants Anthony Annuci, Vernon J. Fonda, Mark L. Bradt, William Hughes, and J. Chisholm. (Dkt. 11 at 11). Plaintiff further states that he filed grievances related to the July 10, 2013, incident. (*Id.*).

In support of their motion for summary judgment, Defendants submit the declaration of Jeffery Hale, the Assistant Director of the Inmate Grievance Program for the New York State Department of Corrections and Community Supervision ("DOCCS"). (Dkt. 9-5). Assistant Director Hale states that he is the custodian of records maintained by the Central Office Review Committee ("CORC"), the body that renders the final administrative decisions under DOCCS' Inmate Grievance Program pursuant to 7 N.Y.C.R.R. §§ 701 *et seq.* (*Id.* at ¶ 2). Assistant Director Hale submits documentation showing that although Plaintiff has appealed nearly 100 grievances to CORC since 1992, including at least four claims that he was improperly pat-frisked and at least one claim that he was sexually assaulted by staff, he did not appeal any complaints related to the July 10, 2013, incident to CORC. (*Id.* at 6-9).

Plaintiff does not claim that he appealed a grievance related to the July 10, 2013, incident to CORC. Instead, he claims: (1) that he notified the Inmate Grievance Resolution Committee ("IGRC") "of his desire to appeal the decision" on his grievances and that "the IGRC failed to [continue] the grievance process" (Dkt. 14 at 1); and (2) that he was not required to grieve his allegations of sexual assault as a result of the Prison Rape Elimination Act of 2003, 42 U.S.C. §§ 15601 *et seq.*, and DOCCS' Directive 4028A. (*Id.* at 3).

Plaintiff commenced this lawsuit on August 19, 2013. (Dkt. 1). On January 1, 2014, Defendants moved for summary judgment in lieu of an answer, arguing that

Plaintiff failed to exhaust his administrative remedies prior to commencing this action and has failed to allege personal involvement in the alleged deprivation of his rights by defendants Anthony Annuci, Vernon J. Fonda, Mark L. Bradt, William Hughes, and J. Chisholm. (Dkt. 9). On January 23, 2014, Plaintiff filed a motion for an extension of his time to respond to Defendants' motion for summary judgment. (Dkt. 10). On January 27, 2014, Plaintiff filed papers in opposition to Defendants' motion for summary judgment. (Dkt. 11).

This case was transferred to the undersigned on February 5, 2014. (Dkt. 12). Defendants filed a reply declaration on February 10, 2014, (Dkt. 13), and Plaintiff filed a sur-reply declaration on February 26, 2013 (Dkt. 14)[1].

## DISCUSSION

### I. Legal Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.

---

1 Plaintiff failed to obtain the Court's permission prior to filing his sur-reply declaration in violation of Local Rule of Civil Procedure 7(a)(6). "It is within the court's discretion whether to consider papers filed without the court's permission." *Coyle v. Crown Enterprises, Inc.*, No. 05-CV-891F, 2009 WL 763401, at *8 (W.D.N.Y. Mar. 19, 2009). Plaintiff has not offered any reason for his failure to include the information contained in his sur-reply declaration in his initial opposition papers. Nevertheless, in the interest of protecting the rights of the *pro se* Plaintiff, the Court exercises its discretion and considers the information contained in the sur-reply declaration in reaching its decision.

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.").

Federal Rule of Procedure 56(b) provides that a party may file a motion for summary judgment "at any time until 30 days after the close of all discovery." A party may move for summary judgment in lieu of an answer. *See, e.g., Anderson v. Rochester-Genesee Reg''l Transp. Auth.,* 337 F.3d 201, 202 (2d Cir. 2003); *Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010); *Riehl v. Martin*, No. 9:13-CV-439 GLS/TWD, 2014 WL 1289601, at *1-2 (N.D.N.Y. Mar. 31, 2014); *Beckford v. New York State Office of Mental Health*, No. 06-CV-00561(SR), 2010 WL 1816689, at *1 (W.D.N.Y. May 3, 2010); *Wegman v. Grimmke*, No. 03-CV-234S, 2004 WL 2202642, at *2 (W.D.N.Y. Sept. 30, 2004).

The standard for granting summary judgment is the same whether the motion is made in lieu of an answer or after discovery has occurred – the moving party must demonstrate that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. *See Anderson*, 337 F.3d at 206. "Once the moving party has met its burden of demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and

the motion will not be defeated merely upon a metaphysical doubt concerning the facts, or on the basis of conjecture or surmise." *Beckford*, 2010 WL 1816689, at *5 (quotation omitted). An inmate's failure to exhaust administrative remedies is properly considered on a motion for summary judgment made in lieu of an answer. *See Crenshaw*, 686 F. Supp. 2d at 236 (granting summary judgment motion made in lieu of answer where inmate failed to file grievances/appeals).

## II. Plaintiff's Motion for an Extension of Time

On January 23, 2014, Plaintiff filed a motion for an extension of time to respond to Defendants' motion for summary judgment on the basis that he did not have access to a legal typist. (Dkt. 10).[2] Four days later, before the Court had an opportunity to rule on his motion, Plaintiff filed his opposition papers (Dkt. 11), thereby mooting his request for an extension of time. Therefore, Plaintiff's motion is denied as moot.

## III. Defendants' Motion for Summary Judgment

### A. Plaintiff has not administratively exhausted his claims

Defendants argue in support of their motion for summary judgment that Plaintiff has failed to exhaust his administrative remedies with respect to his claims regarding the July 10, 2013, incident, as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e (the "PLRA"). Pursuant to the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a

[2] Pursuant to Local Rule of Civil Procedure 7(b)(2), Plaintiff's response to Defendants' motion was due on or about February 7, 2014.

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a three-step DOCS grievance process. The first step in that process is the filing of a grievance with the Inmate Grievance Resolution Committee. Next, the inmate may appeal an adverse decision to the prison superintendent. Finally, the inmate may appeal the superintendent's decision to the Central Office Review Committee ("CORC"). In general, it is only upon completion of all three levels of review that a prisoner may seek relief in federal court under § 1983.

*Crenshaw*, 686 F. Supp. 2d at 236 (citations omitted) (granting motion for summary judgment filed in lieu of answer because plaintiff did not file grievances or appeals to CORC).

In addition to the normal grievance process, when an inmate in the custody of DOCCS makes an allegation of sexual abuse, the allegation is referred to the Inspector General's Office, which performs an investigation. *See Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011) ("[A]n IG investigation of alleged acts of sexual abuse is an integral part of the internal grievance procedure."). The Inspector General's determination following its investigation can also be appealed to CORC. *Id.* ("[A]n IG determination about abuse of an inmate can be appealed to CORC when the determination is reported to and accepted by the superintendent.").

In an effort to rebut the claim that he did not exhaust his administrative remedies, among other documents, Plaintiff has submitted: (1) a letter to defendant Vernon J. Fonda, Deputy Commissioner/Inspector General for DOCCS ("Inspector General

Fonda") dated July 10, 2013, describing the alleged sexual misconduct by C.O. Shearing; (2) a document dated July 10, 2013, and addressed to the "Inmate Grievance Office" describing the alleged sexual misconduct by C.O. Shearing; (3) a document dated July 15, 2013, and addressed to defendant J. Chisholm, the Inmate Grievance Supervisor for Attica ("Supervisor Chisholm"), asking that the grievances he had filed "and those that will no doubt follow in the very next few days" not be consolidated and forwarded to defendant Mark L. Bradt, Superintendent of Attica ("Superintendent Bradt"); (4) an inmate grievance complaint form dated July 17, 2013, in which Plaintiff claims he has been denied the ability to participate in Ramadan; (5) an inmate grievance complaint form dated July 19, 2013, in which Plaintiff claims that Supervisor Chisholm has failed to properly code and address his prior grievances; (6) a document dated July 22, 2013, from Superintendent Bradt to Plaintiff informing Plaintiff that all his grievances have been sent to the grievance office and denying his grievance against Supervisor Chisholm; and (7) an inmate grievance complaint form dated July 10, 2013, regarding C.O. Shearing's conduct during the July 10, 2013, incident. (Dkt. 11 at 31-41, 46, 55).

The Court has reviewed the documents submitted by Plaintiff and concludes that they do not contradict Defendants' records showing that Plaintiff did not appeal any complaints or grievances regarding the July 10, 2013, incident to CORC. In other words, based upon the record before the Court, it is undisputed that Plaintiff did not complete the third step of the DOCCS grievance process and pursue an appeal to CORC. It is well-

established that an inmate who does not appeal to CORC has failed to exhaust his administrative remedies. *See, e.g., Reynoso v. Swezey*, 238 F. App'x 660, 663 (2d Cir. 2007); *Torres v. Carry*, 672 F. Supp. 2d 338, 343 (S.D.N.Y. 2009); *Wesolowski v. Sullivan*, 524 F. Supp. 2d 251, 254 (W.D.N.Y. 2007); *Labounty v. Johnson*, 253 F. Supp. 2d 496, 500 (W.D.N.Y. 2003). Plaintiff has failed to raise a genuine issue of material fact with respect to his failure to exhaust.

### B. Plaintiff's failure to exhaust his administrative remedies is not excused

#### 1. The PREA does not excuse the failure to exhaust

Plaintiff argues in opposition to Defendants' motion that his failure to exhaust his administrative remedies is excused by the PREA. This argument is without merit.

The PREA was enacted in 2003 "to address the problem of rape in prison by creating a commission to study the issue and to develop national standards for the detection, prevention, reduction and punishment of prison rape." *Amaker v. Fischer*, No. 10-CV-0977A, 2014 WL 4772202, at *14 (W.D.N.Y. Sept. 24, 2014). Nothing in the text or legislative history of the PREA suggests that it was intended to abrogate the PLRA's exhaustion requirement. Neither the Second Circuit Court of Appeals nor any of the district courts in this Circuit appear to have directly considered Plaintiff's argument (*i.e.* that the PREA abrogates his obligation to exhaust his administrative remedies with respect to a claim of sexual abuse). However, the federal courts that have considered the issue have concluded that the PREA does not excuse an inmate's failure to exhaust his

administrative remedies with respect to a claim of sexual misconduct. *See Porter v. Howard*, 531 F. App'x 792, 793 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 691, 187 L. Ed. 2d 559 (2013) ("[Plaintiff] provides no support for his contention that he was excused from the requirement that he file an administrative grievance by operation of the Prison Rape Elimination Act of 2003. . . ."); *Myers v. Grubb*, No. CV 12-29-H-DLC, 2013 WL 352194, at *1 (D. Mont. Jan. 29, 2013) ("The Prison Rape Elimination Act ('PREA') does not impose a different administrative remedy scheme or supersede PLRA's requirement that a prisoner exhaust all available administrative remedies before filing suit."); *Lamb v. Franke*, No. 2:12-CV-00367-MO, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.").

Moreover, the Second Circuit Court of Appeals and the district courts over which it has appellate jurisdiction have not hesitated to require inmates claiming sexual misconduct/sexual assault to administratively exhaust even after enactment of the PREA. For example, in *Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011), the Second Circuit Court of Appeals considered whether inmates seeking to bring a class action with respect to claims of sexual abuse and harassment had exhausted their claims and concluded that one appellant had not exhausted her administrative remedies because she "did not appeal to CORC, which is the final step in the grievance procedure for raising issues regarding DOCS policies." *Id.* at 102. Based on the foregoing, Plaintiff has failed to raise a

genuine issue of material fact as to whether the PREA excused his failure to exhaust his administrative remedies.

**2. DOCCS Directive 4028A does not excuse the failure to exhaust**

Plaintiff also argues that DOCCS Directive 4028A, entitled "Sexual Abuse Prevention & Intervention – Staff-on-Inmate," (Dkt. 9-5 at 27-30) abrogated his obligation to file and subsequently appeal a grievance related to the July 10, 2013, incident. Directive 4028A provides, in relevant part: "An inmate may report an incident of staff-on-inmate sexual abuse, sexual threats, staff voyeurism or any act of retaliation against an inmate for reporting an incident of sexual abuse or for participating in an investigation of an allegation of sexual abuse to any employee. The initial inmate report may be verbal or in writing." (Dkt. 9-5 at 29).

Nothing in the text of Directive 4028A suggests that is intended to limit or abrogate the administrative remedies available to an inmate who alleges sexual misconduct by a staff member. Although Directive 4028A may expand the manner in which an initial complaint of sexual misconduct may be made, it does not change the requirement that an inmate must appeal an unfavorable determination of such a complaint to CORC. In fact, in *Amador v. Andrews*, 655 F.3d 89 (2d Cir. 2011), the Second Circuit Court of Appeals found that when a prisoner in the custody of New York State makes an allegation of sexual abuse, "the first step in the grievance procedure for an inmate alleging sexual abuse is an IG [Inspector General] investigation" and "an IG

determination about abuse of an inmate can be appealed to CORC when the determination is reported to and accepted by the superintendent." *Id.* at 98-99.

The evidence submitted by Plaintiff in opposition to Defendants' motion confirms that his sexual misconduct complaint was referred to the Inspector General. Plaintiff's own submission establishes that on August 7, 2013, Deputy Superintendent Hughes sent Plaintiff a memorandum with the subject line "PREA Complaint" in which he explained to Plaintiff that his "allegations of an improper pat frisk" had been referred to the Inspector General's Office and an investigation had been undertaken. (Dkt. 11 at 49). Plaintiff also submits a letter dated August 8, 2013, to Superintendent Bradt in which he states that on the same date, a lieutenant had come to his cell and told him he was investigating Plaintiff's "PREA Complaint." (*Id.* at 50). Plaintiff further submits a memorandum from Superintendent Bradt dated August 9, 2013, in which Superintendent Bradt explains that he has referred Plaintiff's letter to Deputy Superintendent Hughes. (*Id.* at 53). It is thus clear from Plaintiff's own submission that his sexual misconduct complaint was referred to the Inspector General's Office and investigated. There is no evidence in the record (and Plaintiff does not claim) that he took any steps to appeal the Inspector General's Office's determination to CORC.

Additionally, Plaintiff maintains that he did file a formal grievance related to the July 10, 2013, incident and submits a copy of said grievance. (Dkt. 11 at 37-38). Plaintiff does not dispute that he never appealed this grievance to CORC. Even were the

Court to find that Plaintiff reasonably relied on Directive 4028 with respect to his failure to appeal the Inspector General's Office's determination to CORC, "such reliance is not relevant to plaintiff's failure to appeal the denial of his formal grievances." *Morrison v. Parmele*, 892 F. Supp. 2d 485, 489 (W.D.N.Y. 2012), *aff'd sub nom. Morrison v. Stefaniak*, 523 F. App'x 51 (2d Cir. 2013) (finding failure to exhaust where plaintiff claimed he had been "advised by a Correction Officer that his eleven-page handwritten letter would be construed as a grievance and would be investigated by the same authorities as a formal grievance").

The existence and language of Directive 4028A fails to create a genuine issue of material fact as to whether Plaintiff's failure to exhaust his administrative remedies is excused. Directive 4028A addresses the manner in which a complaint of staff-on-inmate sexual misconduct may be initiated and staff obligations following such a complaint; it does not establish or address an inmate's administrative remedies once such a complaint has been made.

**3. Plaintiff's failure to exhaust is not excused by the *Hemphill* factors**

Although Plaintiff has not made an argument to this effect, in light of his *pro se* status, the Court also considers whether Plaintiff's failure to exhaust is excused pursuant to the three-part inquiry established by the Second Circuit Court of Appeals in *Hemphill v. New York*, 380 F.3d 680 (2d Cir. 2004). In *Hemphill*, the Second Circuit Court of Appeals held:

> a three-part inquiry is appropriate in cases where a prisoner plaintiff plausibly seeks to counter defendants' contention that the prisoner has failed to exhaust available administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). Depending on the inmate's explanation for the alleged failure to exhaust, the court must ask whether administrative remedies were in fact 'available' to the prisoner. The court should also inquire as to whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense. If the court finds that administrative remedies were available to the plaintiff, and that the defendants are not estopped and have not forfeited their non-exhaustion defense, but that the plaintiff nevertheless did not exhaust available remedies, the court should consider whether 'special circumstances' have been plausibly alleged that justify 'the prisoner's failure to comply with administrative procedural requirements.'

*Id.* at 686 (citations omitted). There is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies as required by the PLRA. . . ." *Messa v. Goord*, 652 F.3d 305, 308 (2d Cir. 2011).

There is an open question regarding the continuing vitality of portions of the *Hemphill* framework following the United States Supreme Court's decision in *Woodford v. Ngo*, 548 U.S. 81 (2006) that the PLRA requires "proper exhaustion." *See Amador*, 655 F.3d at 102 ("Subsequent decisions have questioned the continued viability of this framework following the Supreme Court's decision in [*Woodford*]."). The Second Circuit Court of Appeals has repeatedly declined to reach this issue. *See id.* (collecting cases and declining to reach the issue). Here, this issue also does not need to be resolved because even applying *Hemphill*, Plaintiff has failed to demonstrate a genuine issue of material fact as to whether his failure to exhaust is excused.

With respect to the first *Hemphill* inquiry, Plaintiff has not presented evidence that administrative remedies were unavailable to him. With respect to Plaintiff's statement in his sur-reply declaration that he notified the IGRC "of his desire to appeal the decision" on his grievances and that "the IGRC failed to [continue] the grievance process" (Dkt. 14 at 1), even accepting Plaintiff's statement as true, the relevant grievance procedures, of which Plaintiff was aware, make it clear that the appropriate procedure for appealing is to submit an appeal form to the grievance clerk. *See* 7 N.Y.C.R.R. § 701.5 (c)(1). Plaintiff does not claim that he followed these procedures and does not claim that he took the necessary steps to actually appeal the decision, as opposed to simply voicing a desire to do so.

The record shows that Plaintiff has appealed nearly 100 grievances to CORC since 1992, including at least four claims that he was improperly pat-frisked and at least one claim that he was sexually assaulted by staff. (Dkt. 9-5 at 6-9). Plaintiff was aware of the process for taking his complaints to the subsequent levels of review. There is no evidence that Plaintiff was unable to appeal his complaint regarding the July 10, 2013, incident; instead, the evidence shows that Plaintiff failed to avail himself of the available administrative procedures.

With respect to the second *Hemphill* inquiry, Defendants have timely raised the administrative exhaustion defense, and the record does not contain any evidence that they impeded Plaintiff in any attempts to avail himself of his administrative remedies. To the

contrary, Plaintiff alleges in the complaint that defendants "attempt[ed] to make Defendants [sic] Sexual Harassment/Sexual Misconduct complaint into a grievable issue. . . ." (Dkt. 1 at 4). Allyson Romesser, the Inmate Grievance Program Supervisor for Attica, submits a declaration in support of Defendants' motion for summary judgment confirming that Plaintiff could have asked the Inmate Grievance Program Supervisor about his grievance and the proper procedure. (Dkt. 9-4 at ¶ 6). Plaintiff has failed to demonstrate that Defendants are estopped from raising the issue of administrative exhaustion.

Finally, no "special circumstances" exist to excuse Plaintiff's failure to exhaust. When considering whether special circumstances exist that excuse a failure to exhaust, the Court considers "circumstances which might understandably lead usually uncounseled prisoners to fail to grieve in the normally required way." *Giano v. Goord*, 380 F.3d 670, 678 (2d Cir. 2004). Plaintiff's claimed misinterpretation of Directive 4028A and the PREA does not constitute a "special circumstance" excusing his failure to exhaust. First, Plaintiff cannot claim to have been unaware of the relevant procedure given that he had previously grieved to completion four claims that he had been inappropriately touched during a pat-frisk. Second, pursuant to *Hemphill*, "a prisoner's mistaken construction of DOCS regulations or directions" may excuse non-exhaustion only if it is reasonable. *Wilkinson v. Banks*, No. 02-CV-361, 2007 WL 2693636, at *9 (W.D.N.Y. Sept. 10, 2007). Plaintiff's claimed reading of the PREA and Directive

4028A is objectively unreasonable, even if genuine. As to the PREA, this law was enacted in 2003 and nothing about its text or the manner in which it has been interpreted and implemented lends any support to Plaintiff's claim that it somehow excepted sexual misconduct claims from the PLRA's exhaustion requirement. As to Directive 4028A, Plaintiff cannot reasonably have believed that this directive was intended to supplant inmates' ability to seek review of an adverse determination on a sexual misconduct complaint. The text of Directive 4028A makes it clear that it seeks to protect inmates from sexual abuse by staff, not limit their administrative remedies.

Based on the foregoing, the Court grants Defendants' motion for summary judgment. Plaintiff has failed to establish that a genuine issue of material fact exists with respect to the failure to exhaust his administrative remedies and he is thus precluded from maintaining this action pursuant to the PLRA.

**C. The Court need not reach Defendants' personal involvement argument**

Defendants argue in the alternative that judgment should be granted to Commissioner Annucci, Inspector General Fonda, Superintendent Bradt, Deputy Superintendent Hughes, and Supervisor Chisholm because Plaintiff has failed to allege their personal involvement in the claimed deprivation of his rights. Because the Court finds that judgment in favor of all Defendants is warranted by Plaintiff's failure to exhaust his administrative remedies, the Court need not reach this argument.

**CONCLUSION**

For the foregoing reasons, Defendants' motion for summary judgment is granted. The Clerk of Court is instructed to enter judgment in Defendants' favor and close the case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: November 13, 2014
Rochester, New York